[No. 1598.]

## THE SOUTHERN DEVELOPMENT COMPANY OF NEVADA, a Corporation, Petitioner, *v.* W. J. DOUGLASS, et al., Constituting the Board of County Commissioners of Esmeralda County, Nevada, Defendant.

Toll Roads—Expiration of Franchise—Lease to Proprietors—Mandamus. Under act of March 8, 1865, sec. 7, as amended February 13, 1877 (Comp. Laws, 459), providing that on the expiration of any toll road franchise its ownership shall vest in the county, but the commissioners of such county may give a lease at a nominal rental on any such road whereon tolls are now collected to the proprietors for a term not exceeding five years, the commissioners cannot grant a lease to a toll road constructed in 1882 under such act, since the phrase, "whereon tolls are now collected," limited the commissioners' power to grant extensions to such roads only as were then in operation.

Original proceeding. Application for *mandamus* by The Southern Development Company of Nevada against W. J. Douglass, and others, as County Commissioners of Esmeralda county. **Denied.**

The facts sufficiently appear in the opinion.

*M. A. Murphy*, for Plaintiff and Petitioner:

I. There can be no dispute but what the board of county commissioners had the power, and was authorized to make and enter the order as made and entered on the 5th day of December, 1899. Such power is delegated to them by Section 459 of the Compiled Laws of Nevada. The boards of county commissioners, in addition to the general powers conferred upon them by statute, are vested by the above act with the power to extend the time to the owners of toll roads to collect tolls thereon, and it is a duty enjoined upon them to do so when the proper application is made. The order

made by the board of commissioners extending the life of the franchise, authorizing the petitioner to continue to collect toll for the term of five years from the 1st day of January, 1900, was made by said board upon a petition duly signed and presented to the board, which gave it jurisdiction of the subject matter.

II.  The granting of franchises, or the extending of the time to exercise the rights thereunder, for or to a toll road, by the board of county commissioners, is a legislative act. Have the boards of county commissioners, being a body of inferior and limited jurisdiction, who derive their power from the statute, the authority to reconsider, to review, reverse, and annul their own action, after it has been discussed, entered in the proceedings, said proceedings having been entered in the minutes of the board, and signed by the presiding officer?  If they do not possess this power, then the order made on the 5th day of December, 1899, by the unanimous consent of every member of the board, is still in force, and the order made on the first day of October, 1900, is absolutely null and void.  (7 Am. & Eng. Ency. Law, 2d ed. p. 1008.)

III.  The legislature having delegated the power to the boards of county commissioners to extend the time or refuse the right to collect toll to persons or corporations whose franchise has expired by lapse of time, after they have once acted, they have exhausted the power delegated to them and cannot again take control of the subject matter until such time as the term of the agreement entered into by and between the board and petitioner has expired.  "It has been stated as a general principle that a board of commissioners has no power to review, reverse, or vacate its own action, and there are several authorities holding, without particular reference to the character of the act as judicial or otherwise, that certain powers conferred on such boards are not continuous in their nature but are exhausted by a single exercise, and cannot, therefore be rescinded in the absence of fraud or imposition."  (Am. & Eng. Ency. Law, vol. 7, p. 1008.)  We call the court's attention to the cases of:  *People* v. *Supervisors of Schenectady*, 35 Barb. 408; *State* v. *Darke Co.*, 43 Ohio St. 311; *State ex rel. Flowers* v. *Bd. of Education*, 35 Ohio St. 368;

*Hanna* v. *Putnam Co.*, 29 Ind. 170; *Delaware Co. Supervisors* v. *Foote*, 3 Hun, 527; *Wren* v. *Fargo*, 2 Or. 19.

IV.   "Where a board of county commissioners is clothed by law with exclusive jurisdiction over roads and highways, its judgments and orders are final and conclusive upon the board, the parties in interest, and third parties." (*Humboldt Co.* v. *Dinsmore*, 75 Cal. 607; 7 Am. & Eng. Ency. Law, 2d ed. pp. 1008–9; *Miller* v. *Bd. Co. Comrs.*, 89 Ind. 14; *Waugh* v. *Chauncey*, 13 Cal. 11; *Brewer* v. *Boston R. Co.*, 113 Mass. 52; 7 Am. & Eng. Ency. Law, 1008; Indiana Cases, *ibid.*; *Heazy* v. *Black et al.*, 90 Ind. 334; *Howard* v. *Brow*, 37 Neb. 905; *Damrell* v. *B. S. San Joaquin*, 40 Cal. 158; *Siebert* v. *Linton*, 5 W. Va. 57; *Humboldt Co.* v. *Dinsmore*, 75 Cal. 607.) "The judgments of the board of commissioners are as conclusive as those of a court of record and are only reviewable upon an appeal or some other direct proceeding." (*Waugh* v. *Chauncey*, 13 Cal. 11; *Goesnitz* v. *Seelinger*, 127 Ind. 422; 433; *Stingley* v. *Nichols Co.*, 131 Ind. 214.)

V.   The board of commissioners having, in due course, acted as the statute required and directed upon the statements as presented to them, and the plaintiff and petitioner having accepted of the terms and conditions imposed by the board, and had printed and posted at each of the toll gates along the said road the reduced rates of toll to be collected thereafter, and worked on and improved said road, the board exhausted its power, and could not, after the close of the term in which such order was made, change or revoke said order. (*Weir* v. *State*, 96 Ind. 311; *Bd. of Comrs.* v. *Gogansport Co.*, 88 Ind. 199; *Graham* v. *Parham*, 32 Ark. 676; *Dorsey* v. *Berry*, 24 Cal. 453; *People* v. *Bd. of Supervisors*, 35 Barb. 418; *People* v. *Delaware Common Pleas*, 18 Wend. 558; *Winter* v. *Fitzpatrick*, 35 Cal. 269; *O'Connor* v. *Blake*, 29 Cal. 316; *Harris* v. *Bd. of Supervisors*, 49 Cal. 662; *In the Matter of Canal Street*, 11 Wend. 154; *In the Matter of Mount Morris Square*, 2 Hill, 19; *Pettee* v. *Elvira P. Wilmarth*, 5 Allen, 144; *McFarland* v. *McCowen*, 98 Cal. 331.)

VI.   Therefore, when the board met in October, 1900, by the order of the board made on that day, they sought to acquire private property for public purposes, by special pro-

ceedings, and not through the will or consent of the owners, to wit:   The board took away our franchise and is seeking to avail itself of the benefit of the money that the company has expended since December, 1899.   (*Cal. State Tel. Co. v. Alta Tel. Co.*, 22 Cal. 423.)

VII.   That on the 1st day of October, 1900, when the board of commissioners assumed to act on the matter of the Walker Lake and Bodie toll road, they had no jurisdiction; there was no petition filed as required by law to give them jurisdiction. The board voluntarily and arbitrarily ordered the road to be declared a free public highway.   Surely the board possessed no such power.   It has been held time out of mind, and no authority can be found to the contrary, that, when a board of county commissioners is called upon to do a particular thing, the record must affirmatively exhibit all the facts necessary to give it the authority to do the act.   (*Pinch* v. *Tehama County*, 29 Cal. 455.)

VIII.   At their meeting on October 1, 1900, no complaint having been made as to the manner in which the petitioner had conducted the road, and nothing appearing in the record authorizing the board to act, the board exceeded its jurisdiction in acting upon the matter; its acts are null and void. (*City of Lowell* v. *Co. Comrs. of Middlesex*, 3 Allen, 550; *Swift* v. *Co. Comrs.*, 6 Nev. 97; *State* v. *Bd. of Comrs.*, 12 Nev. 19; *Johnson* v. *Eureka Co.*, 12 Nev. 30; *State* v. *Bd. of Comrs.*, 5 Nev. 318.)

IX.   In most every state in this union the control of streets, roads and bridges is under the supervision of local tribunals, as boards of supervisors, boards of commissioners, county judges, and common councils, but, whatever may be the title of the tribunal upon which the authority to direct the government and control of roads and bridges is conferred, its authority is in such matters of a judicial nature.   We do not pretend to say that these tribunals are, in the strict sense of the term, courts, but, when acting in the matter of roads and bridges, they are engaged in the exercise of judicial functions; and when they have acted the only way to review their proceedings is by writ of *certiorari*.   (*Doctor* v. *Hartman*, 74 Ind. 222; *White* v. *Conover*, 5 Black. 462; *Stone* v. *Augusta*, 46 Me. 140; *State* v. *Richmond*, 6 Foster, N. H. 235; *State* v.

*McDonald*, 26 Minn. 449; *In the Matter of Canal St.*, 11 Wend. 154; *Damrell* v. *B. S. San Joaquin Co.*, 40 Cal. 158.)

*George S. Green*, District Attorney, and *Torreyson & Summerfield*, for Defendant:

I.   It is admitted by counsel, and conclusively shown by the record, that the contract for the letting of the road was never advertised; that it extended beyond the term of office of any member of the board making it; that there was a lower bid presented than the one accepted; that the lease was to commence in the future; that the term thereof as expressed in the order was for five years and one day, or one day in excess of the time allowed by law; that the meeting at which the order was made was not one of the regular quarterly meetings provided for by law; and that the road was a county road.

II.   At a regular meeting of the board of county commissioners of Esmeralda county, held on the 1st day of October, 1900, a full board being present, and counsel for plaintiff being then and there present at the request of the board, the alleged order of December 5, 1899, under which plaintiff claims a right to the execution of a lease of the Walker Lake and Bodie road, was vacated, rescinded, and set aside, and the road was declared to be a free public highway and county road, by a unanimous vote of the board, and copies of the order were duly served upon counsel for plaintiff and its secretary, Mr. R. J. Laws.

III.   We contend, first, that the order of December 5, 1899, was illegal and void, and that the board had no right, power, authority or jurisdiction to make it or to execute the lease thereunder.   And, second, that, even if it had such power, it was discretionary with them whether they should grant a lease or not, and they had the power to subsequently repeal, rescind and set aside their former legislative action, thus unwisely, unjustly and improvidently entered.   "The granting of a franchise is a legislative act." (*Blood* v. *Woods*, 30 Pac. Rep. 131.)

IV.   That "*mandamus* will never issue to compel a respondent to do acts which are in themselves unlawful," or to compel a technical compliance with the law when it violates the

spirit thereof, are such elementary rules that they need but passing notice. (*Chicot County* v. *Kruze*, 47 Ark. 80; *Gruner* v. *Moore*, 6 Colo. 526; *People* v. *Hyde Park*, 117 Ill. 462; *Ross* v. *Lane*, 3 Smed. & M. (Miss.) 695; *Rosenthal* v. *State Bd. Canvassers*, 32 Pac. 129; *Weidland* v. *Dodson et al.*, 30 Pac. 580.)

V. *Mandamus* will not lie where the right to invoke the writ rests only on the allegations of the complaint, and it appears that the rights of many persons not before the court would be affected by its issuance. (*Farmer's Independent Ditch Co.*, 4 Colo. App. 477.) A petition for *mandamus* must show on its face a clear right to that which is demanded. (*State* v. *LaGrave*, 22 Nev. 417; *People* v. *Dist. Ct. of Colo.*, 51 Pac. Rep. 510; *Huddleson* v. *Bd. Co. Comrs.*, *supra*.) Unless the remedy is clear the court will not attempt to determine rights. (*Bd. of Education* v. *Spencer Co.*, 35 Pac. Rep. 221; *Ewing* v. *Turner*, 35 Pac. Rep. 951; *State* v. *Missouri Pac. R. Co.*, 41 Pac. Rep. 964; *Wilterding* v. *Grum*, 45 Pac. Rep. 134; *Lynde* v. *Dibble*, 53 Pac. Rep. 370; Wood on Mandamus, 29; Merrill on Mandamus, 63.)

VI. "Nor will the writ be issued where it is doubtful whether the respondent has the right by law to do the act sought to be compelled." (*Granham* v. *Parkham*, 32 Ark. 676; *Chicot Co.* v. *Kruze*, 47 Ark. 80; *Gruner* v. *Moore*, 6 Colo. 526; *People* v. *Forquer*, 1 Ill. 104; *People* v. *Thompson*, 115 Ill. 451; *People* v. *Chicago R. Co.*, 55 Ill. 95; *Rice* v. *Walker*, 44 Iowa, 458; *Bassett* v. *School Directors*, 9 La. Ann. 515; *Corby* v. *Durfee*, 96 Mich. 11; *Chosen Freeholders* v. *Vandersdale*, 42 N. J. L. 536; *State* v. *Lewis*, 35 N. J. L. 377; *State* v. *Perine*, 34 N. J. L. 254; *Matter of Schwager*, 36 N. Y. St. Rep. 534.)

VII. "In no case will the writ issue to control the exercise of discretion." (13 Ency. Pl. & Pr. p. 526, and cases cited in note 2.)

VIII. "It does not lie to undo what has been done." (Merrill on Mandamus, sec. 42, and cases cited; *Maxwell* v. *Burton*, 2 Utah, 595.)

IX. It does not lie to correct errors. "When respondent has acted, its action, however informal or erroneous, cannot be set aside or reversed by such writ." (*Treadway* v. *Wright*,

4 Nev. 119; *State* v. *Com. of Eureka Co.*, 8 Nev. 307; *Floral Springs M. Co.* v. *Rives*, 14 Nev. 431; *Hoole* v. *Kinkead*, 16 Nev. 217; *O'Neil* v. *Reynolds*, 116 Cal. 264, 56 Kan. 244.) It will certainly not lie to set aside the order of the board of county commissioners made on October 1, 1900, petitioner having failed to set that order aside by a proceeding in *certiorari* in this court.

X. Where the resolution of the board of supervisors, to enforce which an alternative writ of mandate has been issued, is afterward repealed, the writ must be dismissed. (*People* v. *Bartlett*, (Cal.) 5 Pac. Rep. 674.) We see no essential difference between the case cited and the case at bar.

XI. That a board of county commissioners has power to reconsider and repeal its former action is indisputable as a proposition of law. (*People* v. *Broome Co.*, 65 N. Y. 222; *Tildean* v. *Sacramento Co.*, 41 Cal. 68; *Neal* v. *Franklin Co.*, 43 Ill. 267; *People* v. *Klokke*, 92 Ill. 134; *Matthew* v. *Cook Co. Comrs.*, 87 Ill. 590; *Beckwith* v. *English*, 51 Ill. 147; *Welsh* v. *Bowen*, 103 Ind. 253; *Hundley* v. *Finney Co. Comrs.*, 2 Kan. App. 41; *State* v. *Allen*, 35 Pac. Rep. 609; *People* v. *Bartlett*, 5 Pac. Rep. 674; *Cassin* v. *Sevella Co.*; 70 Tex. 419; *Griggs* v. *Weston Co.*, 5 N. Y. 274.) "It is not only competent but it is the duty of county commissioners to rescind an order improvidently granted." (*Lemby* v. *Forsyth Co. Comrs.*, 85 N. C. 379; *Makemson* v. *Kauffman*, 35 Ohio, 444.)

XII. "The board of supervisors of a county has no authority to grant a franchise to collect tolls on a free public highway, and any attempt of the board so to do does not conclude inquiry as to the character of the road." (*Blood* v. *Wood*, 30 Pac. Rep. 129; *El Dorado Co.* v. *Davidson, supra;* Comp. Laws, 464.)

*M. A. Murphy*, for Plaintiff and Petitioner, in reply:

I. We most respectfully submit that a toll road with all its rights and franchises does not vest in a county until such time as the county commissioners shall have taken action, and we think that Section 7 of the act of 1865, with the amendments (Sec. 459, Compiled Laws of Nevada), sustains this conclusion. In the case of *Davis* v. *Police Jury of Concordia*, reported in the 1st Louisiana Annual, at page 296,

the court said: "What are the extent and limits of the grant? The question of its duration we dismiss from our consideration. Whatever may be the power of the state to limit the duration of such grants, there is not, to our knowledge, any solemn expression of legislative will fixing the time beyond which they will cease to have effect; and, so long as the state abstains from interfering, the grant must endure."

II. There is nothing in the toll-road act that requires that the leasing of the road should be advertised. It is a general act delegating to boards of county commissioners, legislative duties, to wit: The right to collect toll on toll roads, which rights are granted in the first instance by legislative act; it is not a contract, in the sense in which that term is used, that requires the same to be advertised, or prevents the commissioners from voting upon it by reason of the fact that it may extend beyond the term of office of any one or all the members thereof; (1) because the statute provides that the lease may be given for five years; (2) the board of commissioners is a continuous body, and, although the individual members may die, the board of county commissioners still exists.

III. That when the board acted and had under consideration the petitions for the lease of the Southern Development Company, and T. C. Sharp, they were called upon to exercise their best judgment and discretion; they did so, and awarded the lease to this plaintiff, and, after they had acted and entered the order in the minutes of the proceedings for the day, their acts became final, and they could not revoke or annul the same, except upon the ground of fraud.

IV. The petition for the lease only calls for five years' time, and the lease as presented to the commissioners for their signatures only calls for five years, "commencing on the 1st day of January, 1900, and continuing until and including the 31st day of December, 1905."

V. The meeting of the board held on the 4th .and 5th days of December, 1899, was a regular meeting, by reason of the fact that the board had been meeting on the first Monday in each and every month for a number of years.

VI. There are a large class of cases in which boards of

county commissioners and other inferior tribunals act in a two-fold capacity; in one of which they are required to exercise their best judgment and discretion on a given subject, and, after having exercised it, will still have to perform a merely ministerial duty in carrying its decision into effect. The case under consideration falls within that class. In so far as the commissioners exercising their judgment, as to whether or not a lease should be given on the road, or whether it should be granted to the Southern Development Company, or to T. C. Sharp, was the exercising of their judgment and discretion, and in so far as their action went on that point could not have been controlled by *mandamus*, but, after having exercised that judgment and discretion and entered the order granting the lease to the Southern Development Company, then came the ministerial duty involving the exercise of no discretion, to wit: carrying that order into execution by the signing of the lease in pursuance of the terms of the order spread upon their minutes which enjoined that duty upon them. They may be compelled by *mandamus* to perform that duty. "*Mandamus* will issue to a board of commissioners to compel them to enter upon the minutes of its proceedings an agreement made and entered into by and between themselves and other parties." (*Milburn* v. *Comrs. of Glynn Co.*, 37 S. E. 178.) "A claim presented to a board of supervisors, who permitted their session to expire without taking any action upon it, is regarded as rejected, and *mandamus* will lie to compel them to act." (*People* v. *Supervisors of Richmond County*, 20 N. Y. 253, 256: *People ex rel. Bristo* v. *Supervisors of Macomb County*, 3 Mich. 478.)

VII. "The mere fact that the statute provides a remedy does not, however, supersede the remedy by *mandamus*. The relator must not only have a specific, adequate, and legal remedy, but it must be one competent to afford relief upon the very subject matter of his application; and if it be doubtful whether such statutory remedy will afford him a complete remedy, the writ should issue." (*State* v. *Wright*, 10 Nev 172, and authorities therein cited; *Babcock* v. *Goodvich*, 47 Cal. 507; High's Extraordinary Legal Remedies, sec. 17, p. 19.)

VIII. The order of the board, made and entered on the 5th day of December, 1899, was a lease, and not an agree-

ment to make one thereafter; the words, "it was ordered that a lease be and the same is hereby granted to the Southern Development Company for a period of five years," was a demise taking effect from the date of the entry of said order, the terms thereof being accepted on that day by the plaintiff herein. (*Kabley* v. *Worcester Gas Light Co.*, 102 Mass. 392; *Rice* v. *Whitmore*, 74 Cal. 621.) And it was such an order as the board did not have the authority to revoke, or set aside.

By the Court, Massey, C. J.:

The petitioner brings *mandamus* to compel the respondent, the board of county commissioners of Esmeralda county, to execute a lease to the petitioner, granting the right to collect toll on the Walker Lake and Bodie toll road for a term of five years commencing on the 1st day of January, 1900.

It appears that in or about the year of 1882 the petitioner constructed said toll road under the provisions of our statute, and since that time has continuously operated the same.

On the 5th day of December, 1899, upon the request of the petitioner, the respondent made an order granting petitioner the right to collect tolls on said road for a term of five years, but subsequently rescinded the order, and refused to execute the lease upon demand.

Many questions have been discussed, but it is necessary to consider only one, and that involves the power of the board of county commissioners to execute the lease under the facts of this case. Whatever power the board has in this matter is given by Section 7 of the act of March 8, 1865, to provide for the construction of toll roads and bridges in this state, as amended February 13, 1877 (Comp. Laws, 459).

The section referred to reads as follows: "Upon the expiration or forfeiture of any toll road franchise granted under the provisions of this act, and in case of the expiration or forfeiture of any toll road franchise granted under the provisions of any other act, whether the same shall have already happened or may hereafter happen, the ownership of said road, with all the rights and privileges theretofore belonging to the same, shall vest in the county or counties in which said road shall be located; and whenever the same shall have

happened or may hereafter happen, the county commission-
ers of the proper county may declare so much thereof as is
within their county a free highway; *provided*, that in all cases
falling within this section, the county commissioners of the
proper county may give a lease at a nominal rental of any
such road whereon tolls are now collected, either under the
provisions of any act of the legislature of this state or by
and with the consent of the county commissioners afore-
said, to the proprietors, their successors or assignees of such
road, for a term of not to exceed five years, giving to such
lessee the right to collect tolls on such road, subject, however,
to all the provisions of this act; and upon the expiration or
forfeiture of any such lease and whenever and as often as the
same shall happen, the county commissioners of the proper
county, if they deem it expedient, may give a new lease of
such road upon the like terms and conditions, for a further
period of not to exceed five years to the original or any other
lessee, unless said road passes through two or more counties,
in which case the original lessee or his assigns shall have
preference."

This section, as originally enacted, reads as follows: "Upon
the expiration, or forfeiture, of any toll road franchise, the
ownership, with all the rights and privileges, shall vest in the
county or counties in which it is located, and the county com-
missioners may declare it a free highway, or they may collect
tolls on such roads to keep them in good repair; *provided*, the
county commissioners may extend the time of any expired
franchises, so as to allow the owners thereof to collect tolls
thereon for five years, subject to all the provisions of this
act." (Stats. 1864–5, p. 256.)

In 1875 this section was first amended, and as amended
reads as follows: "Upon the expiration or forfeiture of any
toll road franchise, granted under the provisions of this act,
or any other act, the ownership of said road, with all the
rights and privileges theretofore belonging to the same, shall
vest in the county or counties in which said road shall be
located; and whenever the same shall have happened, or
shall happen, the county commissioners of the proper county
may declare so much thereof as is within their county a free
highway, or may collect tolls thereon, to be used in keeping

it in repair, or may by resolution, extend the term of said franchise to the former proprietor of said road, or to his successors or assigns, for the term of five years from the date of such extension, with all the rights and privileges theretofore at any time belonging thereto, subject, however, to the general provisions of this act." (Stats. 1875, p. 156.)

The words "whereon tolls are now collected," found in the proviso of the section as amended in 1877, are not found in the section as it originally stood, or in the amendment of 1875; and the question arises as to what restrictive effect, if any, have these words upon the power of the board. It will be observed that under the provision of the section as it was originally passed the board was empowered to extend the time of any expired franchise granted under the act for a · term of five years.

By the terms of the amendment of 1875 the extension which the board was authorized to grant was not limited to franchises granted under the act, but extended to franchises granted under other acts; and by it the board was also authorized to grant the extension not only to the owner, but to his successor or assigns.

From the language used it is evident that the amendment of 1877 was intended to work a radical change in the policy of the law regulating this matter.

It seems to us that the words of that amendment were intended to restrict and limit the power of the board to grant extensions to such roads only as were then in operation either under the provisions of the act or other acts, or under extensions granted by the board under the provisions of the amended section of 1875.

To hold otherwise would require that we disregard the restrictive language found in the amendment of 1877.

If the legislature had intended that the board should continue to exercise the power conferred by the original section, or by the amended section of 1875, in granting the extension of the franchise to roads constructed after the enactment of the amendment in 1877, it would not have restricted such power to roads "whereon tolls are now collected." These words would have been omitted, and by their omission the

amendment would have been a grant of power claimed by the petitioner in this action.

Under the facts of this case the statute confers no power upon the board to execute the lease, and the peremptory writ will therefore be denied.